**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Luis Enrique Tejeda-Tovar,<br><br>Defendant. | No. CR-19-01182-PHX-JJT (MHB)<br><br>**ORDER** |

Defendant moved to dismiss the Indictment against him in the matter (Doc. 14, Mot.). Defendant challenges the validity of the removal order underlying the Indictment pursuant to 8 U.S.C. § 1326(d). The Government filed a response to Defendant's Motion (Doc. 17, Resp.), and Defendant then filed a Reply (Doc. 20, Reply). For the following reasons, the Court grants the Motion.

**I.    FACTS**

**A.    Defendant's Background**

Defendant was born in Mexico but came to the United States as a small child with his mother and step-father. (Mot. Ex. 1.) He has never had any legal status in the United States. He has three brothers, though one is deceased. (Resp. at 8.) He lived in California until his removal in June 2012. (Mot. at 2.) Additionally, he is fluent in English. (Mot. Ex. 1.)

Defendant has four children, though only his oldest had been born at the time of the challenged removal proceeding. (Mot. at 2.) Defendant did not graduate from high school,

and at the time of his removal hearing, he worked as a seasonal worker. (Resp. at 8.) Defendant's entire criminal history prior to his removal hearing is unclear, but he had no immigration history before the hearing.[1] (Mot. at 17.)

**B.     Defendant's Conviction Underlying Prior Removal**

On May 30, 2012, Defendant was served with a Notice to Appear charging him with being removable from the United States under INA § 212(a)(6)(A)(i) (being an alien present in the United States without having been admitted or paroled). (Mot. Ex. 3.) Defendant was also charged with removability under INA § 212(a)(2)(A)(i)(I) (being an alien convicted of a crime involving moral turpitude). (Mot. Ex. 3.)

Defendant's Motion centers on his crime involving moral turpitude—Child Endangerment, in violation of Section 273a(a) of the California Penal Code.[2] (Mot. Ex. 2.) On July 13, 2010, Defendant was charged via Information with Count One—Child Endangerment with a Special Allegation of personal infliction of great bodily injury under circumstances involving domestic violence. (Mot. Ex. 2.). He was also charged with Count Two—Assault with Great Bodily Injury. (Mot. Ex. 2.). His oldest child was the victim of Defendant's crime that is the subject of this motion. (Resp. at 8.) In October 2010, Defendant pled no contest to Count One and was sentenced to four years in prison. (Mot. Ex. 2.) Defendant was not convicted of the Special Allegation. (Mot. Ex. 2.)

Neither the charging document nor the judgment specify the conduct Defendant pled

---

[1] The Government also cites to the Pre-sentence Report, which is part of discovery and indicates that Defendant was, at one point, a gang member. (Resp. at 8.)

[2] Section 273a(a)—Child Endangerment—provides that:

> Any person who, under circumstances or conditions likely to produce great bodily harm or death, willfully causes or permits any child to suffer, or inflicts thereon unjustifiable physical pain or mental suffering, or having the care or custody of any child, willfully causes or permits the health of that child to be injured, or willfully causes or permits that child to be placed in a situation where his or her person or health is endangered, shall be punished by imprisonment in a county jail not exceeding one year, or in the state prison for two, four, or six years.

Cal. P.C. § 273a(a).

to. (Mot. Ex. 2.) The Abstract of Judgment lists his crime as "Great bodily harm to a child" and lists the applicable statute. (Mot. Ex. 2.) Similarly, the Information for Count One provides the name and section of the statute—Child Endangerment, California Penal Code Section 273a(a)—and then states the full statutory language. (Mot. Ex. 2.) The Information also lists the names, sections, and statutory language for the Special Allegation related to Count One, and for Count Two—Assault with Great Bodily Injury. (Mot. Ex. 2.)

### C. Defendant's Hearing Before the Immigration Judge

On June 13, 2012, Defendant appeared before Immigration Judge (IJ) Scott M. Jefferies. (Mot. Ex. 4.) At the hearing, the IJ advised Defendant of the charges of removability against him and that he had the right to be represented by an attorney. (Mot. Ex. 4.) Defendant opted to proceed *pro se*. (Mot. Ex. 4.)

Next, the IJ questioned Defendant regarding the grounds for removability and confirmed that Defendant is not a citizen of the United States, entered the country illegally, and was convicted of a crime involving moral turpitude. (Mot. Ex. 4.) Consequently, the IJ found "that the charges of removal have been sustained." (Mot. Ex. 4.)

Finally, the IJ evaluated Defendant's eligibility for relief from removal. The following exchange comprises the IJ's entire evaluation:

> **IJ:** By your admissions, I find that the charges of removal have been sustained. If I order you deported, to which country do you want to go?
>
> **D:** Uh, Mexico.
>
> **IJ:** Are you afraid to go back to Mexico?
>
> **D:** No, sir.
>
> **IJ:** Well sir, um, it doesn't appear that you're eligible for any relief. The only thing that you might be eligible for would be voluntary departure, but because of your crime and your time that you spent—How long did you spend in prison?
>
> **D:** Two years.
>
> **IJ:** Two years? You'd not be eligible for voluntary departure, so I will order you removed from the United States to Mexico. Do you want to appeal my decision to a higher court?

|   |   |   |
|---|---|---|
| 1 | **D:** | No, sir. |
| 2 | **Gov:** | The government waives appeal. |
| 3 | **IJ:** | It's a final order. Thank you, sir. |

(Mot. Ex. 4.)

Defendant was physically removed the next day. (Mot. at 5.)

Seven years later, on August 12, 2019, Defendant was found in the United States and is now charged with illegal reentry under 8 U.S.C. § 1326. (Doc. 9.)

## II. ANALYSIS

Defendant argues that his Indictment for illegal reentry under 8 U.S.C. § 1326(a), with a possible sentencing enhancement under § 1326(b)(1), should be dismissed because the removal proceeding underlying that order was faulty. (Mot. at 5.) His argument centers on the IJ's evaluation of Defendant's eligibility for pre-conclusion voluntary departure and the IJ's finding that Defendant would "not be eligible for voluntary departure." (Mot. at 8.) Defendant argues that the IJ erroneously determined that his 2010 conviction was an aggravated felony that precluded voluntary departure eligibility. (Mot. at 8.) Consequently, the IJ did not advise Defendant of his eligibility in violation of due process, and this allegedly prejudiced Defendant because his being granted was relief was plausible. (Mot. at 14.)

Contrarily, the Government claims that Defendant was not eligible for voluntary departure because the IJ could have determined that Defendant's 2010 conviction was an aggravated felony. (Resp. at 4.) The Government also alleges that even if Defendant was eligible for voluntary departure, he was not prejudiced by denial of that relief because it is implausible that he would have been granted voluntary departure had he applied. (Resp. at 8.) Finally, the Government claims that the IJ did, in fact, "inform [Defendant] that he may have been eligible for voluntary departure . . . [and] exercised his discretion in declining to grant [Defendant] voluntary departure." (Resp. at 5.)

In order to collaterally attack an underlying deportation order a defendant must demonstrate that: (1) he exhausted any administrative remedies that may have been

available to seek relief against the order; (2) the deportation proceedings improperly deprived him of judicial review; and (3) the entry of the order was fundamentally unfair. 8 U.S.C. § 1326(d). An underlying removal order is "fundamentally unfair" if: (1) the underlying deportation proceedings violate the defendant's due process rights, and (2) the defendant is prejudiced as a result. *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1048 (9th Cir. 2004.)

### A. The entry of the underlying removal order was fundamentally unfair because Defendant was eligible for voluntary departure, the IJ did not advise Defendant of his eligibility, and he was prejudiced.

When an alien is eligible for relief from deportation, the IJ must advise the alien of his eligibility and give him the opportunity to apply and develop his case. *See* 8 U.S.C § 1229a(b)(4)(B); 8 C.F.R. § 1240.1(c); *Moran-Enriquez v. INS*, 884 F.2d 420, 422-23 (9th Cir. 1989). Additionally, the IJ must advise the alien of his apparent eligibility for relief, though this duty is only implicated when the record makes the alien's eligibility apparent. *See* 8 C.F.R. § 1240.11(a)(2); *United States v. Rojas-Pedroza*, 716 F.3d 1253, 1263 (9th Cir. 2013); *United States v. Melendez-Castro*, 671 F.3d 950, 954 (9th Cir. 2012) (reiterating that IJs must advise aliens of their apparent eligibility for relief when the record contains an inference of eligibility). An IJ's failure to do so violates due process. *United States v. Arietta*, 224 F.3d 1076, 1079 (9th Cir. 2000).

To be eligible for pre-conclusion voluntary departure an alien must: (1) have the present ability to pay for his departure from the United States; (2) not have been convicted of an aggravated felony; and (3) not have been granted voluntary departure previously. 8 U.S.C. § 1229c(a)(1), (c).

Defendant had the present ability to pay for his departure and had not previously been granted voluntary departure. (Mot. Ex. 1.) Therefore, the remaining issue is whether Defendant was convicted of an aggravated felony.

### 1. Defendant was eligible for voluntary departure because he had not been convicted of an aggravated felony.

Under the Immigration and Nationality Act, several offenses are considered aggravated felonies. INA § 101(a)(43). Relevant to Defendant's case is § 101(a)(43)(F)—a crime of violence (as defined in section 16 of title 18, but not including a purely political offense) for which the term of imprisonment is at least one year. A crime of violence is:

> "an offense that has an element the use, attempted use, or threatened use of physical force against the person or property of another." Physical force is violent force or force capable of causing physical pain or injury to another.

*Johnson v. United States*, 559 U.S. 133, 140 (2010) (quoting 18 U.S.C. § 16).

To determine whether an alien's previous conviction is a crime of violence courts apply the categorical approach. *See Taylor v. United States*, 495 U.S. 575, 600–02 (1990). This approach involves comparing the elements of the state statutory offense with the elements of the federal offense. *Quintero-Salazar v. Keisler*, 506 F.3d 688, 692 (9th Cir. 2007). If the state statute prohibits more conduct than the federal offense, there is no categorical match.

If there is no categorical match, then courts may apply the modified categorical approach. *Id*. Under this approach, courts determine whether the state offense is divisible, and then evaluate whether the defendant was necessarily convicted of the elements of a crime that match the federal offense. *Shepard v. United States*, 544 U.S. 13, 20 (2005). The court may examine certain judicially noticeable documents to make this determination including the indictment or judgment of conviction. *Tokalty v. Ashcroft*, 371 F.3d 613, 620 (9th Cir. 2004).

Defendant's conviction under Section 273a(a) is not a categorical match because it proscribes more conduct than does the federal "crime of violence" definition. *Ramirez v. Lynch*, 810 F.3d 1127, 1133 (9th Cir. 2016). The Ninth Circuit in *Ramirez* relied on cases pre-dating Defendant's removal hearing to determine that the California statute

criminalizes conduct that would not necessarily require the use of force that the federal crime requires.³ *Id* at 1133–34.

Even if Defendant's conviction is divisible and thus was subject to the modified categorical approach, the available judicially noticeable documents do not create a match between Defendant's plea and the federal crime. The available judicially noticeable documents are the Information and the Abstract of Judgment. (Resp. at 4.) Neither document demonstrates that Defendant pled to conduct that matches the federal crime of violence definition. Defendant pled to Count One of the Information, which sets out the full statutory language, and, as noted above, prohibits more conduct than the does the federal crime. (Mot. Ex. 2.) He did not plead to the Special Allegation. (Mot. Ex. 2.) The Abstract of Judgment only provides the name of Defendant's crime, without specifying the conduct or elements he pled to. (Mot. Ex. 2.)

The Government asserts that "the IJ could have followed [the] BIA's interpretation that California Penal Code § 273a(a) was a divisible statute for the purposes of applying a modified categorical analysis." (Resp. at 4.) The Government further contends that the Special Allegation attached to Count One of the Information includes language that could sufficiently narrow Defendant's pled conduct to meet the crime of violence definition. (Resp. at 4.) However, the Government also acknowledges that Defendant did not plead to the Special Allegation and it was not proven. (Resp. at 4.) Furthermore, the Government "concedes that the IJ did not expressly find that [Defendant's] conviction was an aggravated felony that would preclude him from seeking pre-conclusion voluntary departure." (Resp. at 4.)

In any event, had the IJ found that Defendant's conviction was an aggravated felony, such a finding would have been erroneous because Defendant's conviction was not a

---

³ That court also determined that the California statute is not divisible and thus is not subject to the modified categorical approach. *Id*. at 1138. Consequently, the California statute is not a crime of violence, and thus is not an aggravated felony. Nevertheless, this case was decided after Defendant's removal hearing and at that time, the Board of Immigration Appeals had previously determined that the statute was divisible and could be a crime of violence. *See e.g., In re: Jaime Reyes-Aguayo*, 2004 WL 2374636 (BIA (Aug. 16, 2004)).

categorical or modified categorical match to the federal crime of violence or any other aggravated felony.[4] Therefore, Defendant was eligible for voluntary departure.

### 2. The IJ violated Defendant's due process rights by failing to advise him of his eligibility for voluntary departure.

As discussed above, Defendant was eligible for voluntary departure. Therefore, the next issue is whether the IJ fulfilled his duty to "meaningfully advise[ Defendant] of his right to seek voluntary departure." *Melendez-Castro*, 671 F.3d at 954. The Court concludes he did not.

Instead of correctly informing Defendant that he was eligible for voluntary departure, the IJ told him the opposite. (Mot. Ex. 4.) The IJ told Defendant that:

> it doesn't appear that you're eligible for any relief. The only thing that you might be eligible for would be voluntary departure, but because of your crime and your time that you spent—how long did you spend in prison? . . . Two years? You'd not be eligible for voluntary departure.

(Mot. Ex. 4.) This exchange shows that the IJ concluded Defendant *was not* eligible for voluntary departure. Defendant claims this may have been because the IJ mistakenly concluded Defendant's conviction was an aggravated felony. (Mot. at 8.) However, the cause of the IJ's failure to inform Defendant of his eligibility for voluntary departure is irrelevant. The IJ had a duty to inform Defendant of his eligibility, and by not doing so, he denied Defendant due process.

The Government argues that, in fact, the IJ did inform Defendant of his eligibility. (Resp. at 5.) It also asserts that the IJ considered whether to grant voluntary departure, and in his discretion, denied Defendant's claim. (Resp. at 5–6.) Implicitly, the Government necessarily argues that Defendant applied for voluntary departure.[5] The Government bases

---

[4] The Court also notes that an ICE attorney declined to approve administrative removal in Defendant's case because of his conclusion that Defendant's conviction was not an aggravated felony. (Mot. Ex. 5.)

[5] This contention is contradicted by the IJ's summary of the proceedings where he did not check the box on the form that would indicate Defendant did apply for, and was denied, voluntary departure. (Mot. Ex. 3.)

this argument on the IJ's question regarding Defendant's time in prison, which the Government argues is evidence that the IJ weighed the factors relevant to deciding the substance of a voluntary departure application.[6] (Resp. at 5–6.) This argument is unpersuasive.

The IJ's explicit communications indicate he did not determine Defendant was eligible for voluntary departure. The IJ told Defendant "[y]ou'd not be eligible for voluntary departure." (Mot. Ex. 4.) Furthermore, the IJ's equivocal comments also indicate he concluded Defendant was ineligible. He told Defendant "it doesn't appear that you're eligible", and "[t]he only thing you might be eligible for is voluntary departure, but because of your crime and your time that you spent [in prison] . . . [y]ou'd not be eligible for voluntary departure." (Mot. Ex. 4) (emphasis added). These statements more reasonably indicate that the IJ found Defendant was ineligible, rather than, as the Government's urges, that the IJ found he was eligible, considered the relevant factors, and then denied relief.[7] The Court agrees with Defendant that the IJ's question regarding Defendant's time in prison was more likely related to the one-year imprisonment requirement for the aggravated felony definition. *See* INA. § 101(a)(43)(F).

Accordingly, the IJ denied Defendant due process. Therefore, the remaining inquiry is whether Defendant was prejudiced by the violation.

### 3. Defendant was prejudiced by the due process violation because he had a plausible claim for voluntary departure.

An alien is prejudiced if he had a plausible ground for relief from deportation. *United States v. Arce-Hernandez*, 163 F.3d 559, 563 (9th Cir. 1999). An alien does not

---

[6] Even if the Court found that the IJ, in fact, allowed Defendant to apply for voluntary departure, considered the application, and rejected it, there would still be a due process violation. This is because an IJ must consider the favorable *and* unfavorable factors in evaluating a voluntary departure application. *See,* e.g., *United States v. Frias-Flores*, 425 Fed. Appx. 640, 642 (9th Cir. 2011) (unpublished). Here, the IJ expressly considered only unfavorable factors.

[7] The Government's reliance on *United States v. Quintana-Ramos*, 375 Fed. Appx. 703, 705 (9th Cir. 2010) (unpublished), is similarly inapposite. In that case, the IJ explicitly indicated that voluntary departure was available, but that the IJ was exercising discretion and choosing not to grant relief. *Id*. Defendant's case is distinguishable.

need to show he would have actually been granted relief, only that it was plausible. *Ubaldo-Figueroa*, 364 F.3d at 1050. The defendant has the burden of proving prejudice. *United States v. Valdez-Novoa*, 780 F.3d 906, 916–17 (9th Cir. 2015). Once the defendant has made a *prima facie* showing, the burden shifts to the government to show that the procedural violation could not have changed the outcome. *United States v. Gonzalez-Valerio*, 342 F.3d 1051, 1054 (9th Cir. 2013).

In making this determination, courts consider the positive and negative factors an IJ would consider relevant in making the same determination. *United States v. Gonzalez-Flores*, 804 F.3d 920, 928 (9th Cir. 2015). Positive factors include "long residence, close family ties to the United States, and humanitarian needs." *Rojas-Pedroza*, 716 F.3d at 1265. Negative factors include "the nature and underlying circumstances of the deportation ground at issue; additional violations of the immigration laws; the existence, seriousness, and recency of any criminal record; and any other evidence of bad character or the undesirability of the applicant as a permanent resident." *Id*.

Because voluntary departure is a lesser form of relief, it can plausibly be granted even in typical cases. *See United States v. Alcazar-Bustos*, 382 Fed.Appx. 568, 571 (9th Cir. 2010) (unpublished). However, the mere possibility of a different outcome does not rise to the level of plausibility. *Gonzalez-Flores*, 804 F.3d at 928. Instead, courts focus on whether similarly situated claimants received relief. *Id*.

Defendant has both positive and negative equities. He lived in the United States since childhood, his immediate family and children reside in the United States, and he had no immigration history prior to his removal proceeding.[8] (Mot. at 17.) His negative equities include the nature of the underlying offense (although details of the crime are sparse), his limited work-history and education, and possible past gang activity. (Resp. at 8.)

Nevertheless, the Court finds that Defendant had a plausible chance of obtaining voluntary departure. Defendant points to several cases in which courts found that claimants

---

[8] The Court notes that Defendant had only one child residing in the country at the time of his hearing. (Mot. at 2.) This same child was the victim of the crime for which he was convicted. (Resp. at 8.)

with equities like Defendant's had plausible claims for relief. (Mot. at 16.) These equities include family ties to the United States and varying, violent, and extensive criminal histories. *E.g.*, *Alcazar-Bustos*, 382 Fed.Appx. at 570. The cases that Defendant cites persuade the Court that it is plausible Defendant would have been granted voluntary departure had the IJ considered his eligibility.

The cases Defendant cites from the Ninth Circuit are particularly persuasive. In *Alcazar-Bustos*, the court found that Alcazar-Bustos had a plausible chance of obtaining voluntary departure despite "his convictions, associations with gang members, prior drug use, and sporadic work history." *Id*. Balanced against those negative equities, the court found that his positive equities—long-time residence and U.S. citizen family members— gave Alcazar-Bustos a plausible chance of relief. *Id*. at 571–72; *see also U.S. v. Vasallo-Martinez*, 360 Fed.Appx. 732–33 (9th Cir. 2009) (unpublished) (holding that the defendant had a plausible chance of receiving voluntary departure despite his four DUI convictions and three unrelated misdemeanors). Furthermore, in *Arietta*, the court found that Arietta had a plausible chance of waiver of removal even though he was convicted of attempted forcible rape. *Arrieta*, 224 F.3d at 1078–83. Notably, waiver of removal is a more difficult form of relief to acquire than voluntary departure. *See Alcazar-Bustos*, 382 Fed.Appx. at 570.

The Government's attempts to distinguish these cases from Defendant's case are ultimately unconvincing. For example, the Government argues that the court in *Alcazar-Bustos* did not consider Alcazar-Bustos's criminal history long or significant. (Resp. at 8.) But nothing in the record before the Court suggests that Defendant has a longer or more significant criminal history than Alcazar-Bustos's three juvenile adjudications and two firearm convictions that resulted in prison terms. *See Alcazar-Bustos*, 382 Fed.Appx. at 569. Additionally, the Government's attempts to distinguish *Vasallo-Martinez* and *Arrieta* do not persuade the Court. While the Government is correct that Vasallo-Martinez owned his own business, was married to a U.S. citizen, and had a U.S. citizen child, this does not significantly distinguish his case from Defendant's. Defendant also has U.S. citizen family

members, including his son, and his criminal history is not as extensive as Vasallo-Martinez's. (Mot. Ex. 1); *Vasallo-Martinez*, 360 Fed.Appx. at 732. Finally, the Government argues that *Arrieta* is distinguishable because Arrieta had to show "extreme hardship" to obtain relief. (Resp. at 9.) Though true, this does not help the Government since the court in *Arrieta* found it was still plausible that Arrieta would obtain relief despite him needing to show "extreme hardship" and his having a criminal conviction for attempted forcible rape. *Arrieta*, 224 F.3d at 1078–83. Accordingly, the Government has not rebuted Defendant's plausibility showing.

Because Defendant was denied due process and was prejudiced by the deprivation, the underlying deportation order was fundamentally unfair. Accordingly, Defendant's collateral attack of the underlying deportation order will be successful if (1) he exhausted any administrative remedies that may have been available to seek relief against the order; and (2) the deportation proceedings improperly deprived him of judicial review. The Court finds that Defendant's challenge satisfies both requirements.

**B.** **The due process violation relieved Defendant of the requirement that he exhaust administrative remedies and deprived him of judicial review.**

The Government apparently does not challenge Defendant on this issue since it does not address Defendant's arguments. Nevertheless, Defendant is correct that he has met the requirements of 8 U.S.C. §§ 1326(d)(1)–(2), despite his appeal waiver at his hearing.

Defendant is exempted from the exhaustion of administrative remedies requirement in 18 U.S.C. § 1326(d)(1). *See Ubaldo-Figueroa*, 364 F.3d at 1049. Though Defendant did not appeal his removal order to the Board of Immigration Appeals, an appeal waiver must be "considered and intelligent". *Id*. Defendant's appeal waiver was not "considered and intelligent" because the IJ did not advise him of his eligibility for voluntary departure or allow him to develop the issue. *See id*. at 1049–50. Therefore, Defendant's appeal waiver is invalid and his failure to exhaust administrative remedies is excused.

Furthermore, because Defendant's appeal waiver was invalid, he was deprived of a meaningful opportunity for judicial review, *i.e.* that appeal. *See Melendez-Castro*, 671 F.3d at 954.

Therefore, Defendant has met each requirement of 8 U.S.C. §§ 1326(d). First, he was excused from exhausting administrative remedies because the defects at his removal hearing rendered his appeal waiver invalid. Second, he was improperly deprived judicial review by the invalid appeal waiver. Finally, he demonstrated that the entry of the order was fundamentally unfair because he was eligible for voluntary departure, not advised of his eligibility, and prejudiced as a result. Accordingly, the Court grants Defendant's Motion to Dismiss Indictment (Doc. 14).

**IT IS ORDERED** granting Defendant's Motion to Dismiss Indictment (Doc. 14).

**IT IS FURTHER ORDERED** directing the Clerk of Court to close this case.

**IT IS FURTHER ORDERED** directing the United States Marshal to release the Defendant as to this case only.

Dated this 16th day of January, 2020.

Honorable John J. Tuchi
United States District Judge